544 So.2d 444 (1989)
STATE of Louisiana
v.
Rayfield ROBINSON & John M. Horton.
No. KA-7331.
Court of Appeal of Louisiana, Fourth Circuit.
May 9, 1989.
*445 Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for defendants-appellants Rayfield Robinson and John Horton.
Before KLEES, BYRNES and WARD, JJ.
KLEES, Judge.
On February 10, 1986, the defendants Rayfield Robinson and John W. Horton were each charged with one count of simple burglary of an inhabited dwelling. They were arraigned and pled not guilty. On April 2, 1986, in a judge trial, the defendants were found guilty as charged. The defendants moved for a new trial which was denied May 1, 1986. Robinson was sentenced to three years at hard labor, without benefit of parole, probation or suspension of sentence and Horton was sentenced to ten years at hard labor without benefit of parole, probation or suspension of sentence. A motion for appeal as to each defendant was filed. The trial judge granted an oral motion of appeal as to both defendants. On May 7, 1986, the trial court amended the sentence as to Horton to provide that it be served without benefit of probation, parole or suspension of sentence as to the first year only. Defense counsel then filed a written motion for appeal as to Robinson, but withdrew Horton's motion for appeal. Nonetheless, we will consider Horton's application as an out of time appeal.
Errors Patent
The docket master reveals the defendants' motion for new trial was denied May 1, 1986. The transcript of that date does not indicate the defendants waived the twenty-four hour delay before sentencing accorded them by C.Cr.P. art. 873. However, a trial court' failure to wait twenty-four hours from the denial of a defendant's motion for new trial before sentencing is harmless error absent a showing of prejudice. State v. Hancock, 502 So.2d 1098 (La.App. 4th Cir.1987). The defendant has not assigned this as error nor has he alleged any prejudice resulted from his failure to waive the delay. This error is harmless.
FACTS:
Patricia Spears, 5227 East Nemours Street, stated she saw defendant Robinson's car parked in front of Rosalind Smith's house on January 3, 1986. She said she knew John Horton, Rayfield Robinson, his wife Clementine Clay, and Clementine's son Alonzo. She testified she saw Robinson, Horton (whom she knew as John Clay) and Alonzo Clay outside her house, and she spoke to them. She went back into her house, and saw through a window that Robinson's car was backed up to Smith's house. She walked to a neighbor's house and the two stood in her kitchen window and watched Horton and Robinson loading objects into the car. She specifically saw the men load a television into the back seat. She said she did not see Alonzo Clay during that time.
Rosalind Smith testified when she returned home January 8, (evidently from vacation) and found her stereo, television, *446 and telephones taken from the house, she called her mother from a neighbor's house and her mother in turn called the police. She said she had never seen either of the defendants and had not given them permission to enter her house. She said she did know Clay from the neighborhood.
Officer Michael Nussley testified he responded to a burglary at 5235 East Nemours Street on the afternoon of January 8, 1986. He spoke with the victim, Rosalind Smith, and two neighbors who were witnesses. He found the kitchen window open and the house in disarray. He called the crime lab, and officers dusted for fingerprints but were unsuccessful in obtaining any. As a result of his investigation, he arrested Alonzo Clay. Nussley did not recover any of the stolen merchandise.
Officer Shawn Vantress of NOPD's Crime Lab stated he dusted for fingerprints, but could not lift one.
Detective Larry Lesley, NOPD, testified he obtained an arrest warrant for the defendants and executed the warrant January 9, 1986 in Slidell. Clementine Clay answered the door and said no one else was at home. However, Lesley heard noises coming from the rear of the house. Lesley and his partner Detective Noulette entered the house. Lesley found Horton in a bedroom closet. Noulette found Robinson hiding under covers in a rear bedroom.
At the close of the State's case, the defense moved for a directed verdict which was denied.
The defense called Clementine Clay who said she lived with Rayfield Robinson, that Horton was her brother, and that Alonzo Clay was her son. She said she was a friend of Spears, who had once dated Horton, until Spears began lying in this case. She testified that she did not see Horton or Robinson bring any stolen property into her house. She related that on the day of the crime, Alonzo was in New Orleans with Clementine's mother, and that Horton and Robinson were at home all day January 3.
Laura May Holmes testified that she lives across the street from Clementine Clay and the defendants. She said she saw the three at home January 3, and that they came to her house and played cards from 4:00 p.m. to 1:00 a.m.
Defendant Robinson testified he was at home and at Laura Holmes's house January 3.
The defense rested and the State called Alonzo Clay as a rebuttal witness. He said he did not remember seeing Spears in New Orleans on January 3, and he did not see Robinson's car, but that Robinson and Horton did come to his grandmother's (Rosella Clay's house, also on East Nemours Street) at 5:00 p.m. He went with them to the store in Robinson's car, and they left. He said he did not go into Smith's house.
Assignment of Error No. 1.
Defendants contend that they did not waive their right to trial by jury.
In the case, before us the transcript of the election of judge trial shows:
BY THE COURT:
Mr. Lanasa, you're ready to proceed?
BY MR. LANASA:
I would ask the Court for a couple of minutes and speak with Mr. Robinson, who was just brought down.
(DEFENSE COUNSEL SPEAKS WITH DEFENDANT OFF THE RECORD)
BY THE COURT:
Is the defendant ready to makeare the defendants ready to make their selection?
BY MR. LANASA:
At this time, the defendants would both waive their right to a jury trial.
BY THE COURT:
Mr. John Horton, do you wish to follow the advise of your attorney and waive your right to a trial by a jury of six (6) persons and be tried by the Court.
BY MR. HORTON:
Against my better judgment, I will follow my attorney's advise.
BY THE COURT:
You're saying that you're going to waive your right to trial by jury and be tried by the Court alone?
BY MR. HORTON:
Yes, sir.

*447 BY THE COURT:
And that's also your selection to be tried by the Court alon- and waive your right to trial by jury, Mr. Robinson?
BY MR. ROBINSON:
Yes, sir, I'm going to waive it.
Although the trial court did not personally inform the accused of their rights to a jury trial, the defendants consulted with their attorney before the waiver. The waiver, therefore, appears valid. State v. Legnon, 464 So.2d 910 (La.App. 4th Cir. 1985).
ASSIGNMENTS OF ERROR PRO SE

One
The defendant John Horton complains of a warrantless arrest not based on probable cause. Lesley however testified at trial that he obtained a warrant before the arrest after an interview with Spears. The warrant and supporting affidavit are not contained in the record. The court may consider ordering the warrant to supplement the record. However, Spears testified at trial she knew the defendants and watched them commit the crime. The defendants attempted to suggest that Spears testified out of revenge. However, no facts adduced at trial suggested why Spears would be seeking revenge. Clementine Clay, lover of Robinson and brother of Horton, testified she was in fact friends with Spears until Spears reported the crime. As Illinois v. Gates instructs "Even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case." 462 U.S. 213, 233, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983). In this case, there appears little reason to question Spear's motives. In addition, her detailed description of the crime, along with her statement she observed the event firsthand, entitles her tip to great weight. There can be little argument the warrant and the arrest were based on probable cause. This assignment is without merit.

Two
The defendant argues the trial court erred in allowing defense counsel to waive the defendant's presence at the preliminary hearing. C.Cr.P. art. 834 provides: "The defendant has a right to be present, but his presence is not essential to the validity of the making, hearing of, or ruling on a motion on a preliminary application addressed to the court" when the jury is not present. (See also C.Cr.P. art. 831 listing when a defendant must be present, which article does not include the preliminary hearing).
This assignment is meritless.

Three
The defendant complains of the denial of his motion to suppress identification. The minute entry of March 7, 1986 states "Motion to Suppress Evidence, Identification and Confession do not lie". This entry was an apparent error as to the motion to suppress identification since no such motion was filed. Moreover, no identification occurred except the in-court identification. Spears testified she knew the defendants, spoke with them before the crime, and watched them commit the crime. There is no issue as to the identification. This assignment is meritless.

Four
Pro se assignment four is discussed in defense counsel assignment one.

Five
The defendant complains of the denial of his motion for new trial.
At the motion for new trial hearing, Gina Kimble testified that on January 2 (rather than January 3), after dark, Patricia Spears came to her house and told her to look out of her window, that John Horton and Rayfield Robinson were robbing the next door neighbor. Spears told her the men had backed a car into the driveway. Spears wanted to call the police, but Kimble told her not to because the Clays lived next to her.
*448 Kimble testified that when she and Spears were looking out of the window, she could see a parked car, and two people moving furniture. She could not see the men's faces. She said she could see the front of Smith's house but not the back.
Kimble also said that Rosella Clay had complained to her about Spears' knocking on Kimble's door too early in the morning. Rosella Clay had threatened to "shoot everyone in the head". Kimble knew that Spears and Horton had dated at one time, and that Spears had expressed interest in reconcilliation at some point. Kimble also said the Clays had threatened her child before and that she was afraid of them. Spears and Clementine Clay both answered questions based on pictures taken on the scene, which questions were aimed at showing the impossibility of seeing Smith's house from Kimble's house and at showing the back seat of the car as too small for a television set. However, the answers did not appear conclusive of those issues.
The defendant argues the motion should have been granted because Kimble testified Spears did not look through her window. A reading of the transcript reveals the defendant is incorrect. Kimble testified she and Spears did watch the men out of the kitchen window.
The defendant also argues the State knew of Kimble's testimony and withheld the information in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The State did call Kimble at trial. Furthermore, Brady applies to exculpatory evidence. None of Kimble's testimony was exculpatory.

Six
The defendant alleges the State did not present evidence sufficient to support the conviction.
The standard for determining the sufficiency of evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). To prove the crime of simple burglary of an inhabited dwelling, the State must prove: 1) the unauthorized entry 2) of an inhabited dwelling 3) with the intent to commit a theft or felony therein. It is not necessary for a person to be present in the house at the time of the entry to satisfy the "inhabited dwelling" requirement of the statute. State v. Conn, 420 So.2d 1123 (La.1982). Intent to commit a theft may be inferred from the circumstances surrounding the commission of the crime. State v. Pike, 426 So.2d 1329 (La.1983).
In this case, Spears testified she watched the defendants loading objects into Robinson's car from Smith's house. In addition, Smith testified that she did not give the defendants permission to enter her house. Accordingly, the evidence appears sufficient. State v. Steward, 483 So.2d 155 (La.App. 4th Cir.1986).
The defendant argues Spears was not credible because of animosity that existed between them. However, the defense failed to present any evidence to support that claim. Moreover, the credibility of a witness is an issue for the trier of fact not reviewable by an appellate court.

Seven
The defendant argues his guilty plea was not knowing, voluntary, or intelligent. The defendant did not plead guilty in this case. He was found guilty by a judge after a full trial.

Eight
The defendant argues his sentence was excessive.
Article I, Section 20 of the 1974 Louisiana Constitution prohibits the imposition of excessive punishment. A sentence may be reviewed for excessiveness even though it is within statutory limits. State v. Cann, 471 So.2d 701 (La.1985); State v. Francosi, 511 So.2d 1181 (La.App. 4th Cir.1987); State v. Brumfield, 496 So.2d 425 (La.App. 4th Cir.1986), writ den., 503 So.2d 13 (1987). The imposition of a sentence, although *449 within the statutory limit, may be unconstitutionally excessive if it is "grossly out of proportion to the severity of the crime" or "is nothing more than the purposeless imposition of pain and suffering." State v. Brogdon, 457 So.2d 616, 625 (La. 1984), cert. den. Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345 (1985). See also State v. Francosi, supra; State v. Brumfield, supra. In order to ensure adequate review by the appellate court, there must be an indication in the record that the trial court considered both the aggravating and mitigating factors set forth in C.Cr.P. art. 894.1 in determining the defendant's particular sentence. State v. Francosi, supra; State v. Brumfield, supra.
In this case, the trial court stated "the court accepts the factual basis as was presented at the trial in this matter and the court is mindful of art. 894.1, subparagraphs (a), (b), and (c) in determining the sentence of the defendant". (Sen.Tr. 5/1/86 p. 3).
In State v. Conger, 526 So.2d 431, 432 (La.App. 4th Cir.1988), writ den. 488 So.2d 199 (La.1986), appeal after remand 526 So.2d 431 (La.App. 4th Cir.1988) this court stated:
Subsection C of Art. 894.1 provides that the `court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence.' In the case at bar the judge states that the sentence was imposed under Art. 894.1 A, (1), (2) and (3). However, he did not specifically enumerate for the record the factors he considered and the basis for imposing sentence as mandated by Art. 894.1 C.
In State v. Smith, 430 So.2d 31 (La. 1983), the Supreme Court analysed a situation similar to the case at bar and held:
(t)he trial court's failure to comply with art. 894.1 does not, in and of itself, render a sentence invalid. We will uphold the sentence if the record cleary illumines the sentencing choice. [Cite omitted] The record must reflect that the sentence is not excessive. 430 So.2d at 46.
In this case, the judge did not specifically enumerate for the record the factors he considered and the basis for imposing sentence as mandated by C.Cr.P. art. 894.1. However, the trial court specifically stated that it was mindful of C.Cr.P. art. 894.1 subsection (A), (B) and (C) in sentencing the defendant.
Here, the trial court referred to a "past criminal record for this particular crime" as horrendous. The record reveals that probation was revoked for another crime of which the defendant had been convicted. When asked to run this sentence concurrent with previous one, the trial court stated "I will run those two sentences together, but I will not run it together with the parole violation, too many burglaries."
In State v. Bertram, 511 So.2d 1171 (La. App. 4th Cir.1987), writ den. 517 So.2d 810 (La.1988), this court affirmed a sentence of twenty years for a conviction of simple burglary of an inhabited dwelling where the defendant was a third offender. Under these circumstances we find sufficient evidence in the record to warrant the sentence imposed.
Accordingly for the reasons stated above, defendant's convictions and sentences are hereby affirmed.
AFFIRMED.