623 So.2d 919 (1993)
STATE of Louisiana
v.
Earl PETERSON.
No. 92-KA-1058.
Court of Appeal of Louisiana, Fourth Circuit.
August 31, 1993.
*920 Harry F. Connick, Dist. Atty., Jack Peebles, Asst. Dist. Atty., New Orleans, for plaintiff.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for defendant.
Before LOBRANO, WARD and ARMSTRONG, JJ.
ARMSTRONG, Judge.
The defendant, Earl Peterson, was charged by bill of information with one count of simple burglary, a violation of R.S. 14:62. After a jury trial the defendant was found guilty as charged. He was sentenced to serve six years at hard labor with credit for time served. Pursuant to a multiple bill of information filed by the State, the defendant's previous sentence was vacated, and he was resentenced as a third offender to eight years at hard labor with credit for time served. The defendant now appeals, raising one assignment of error.
The record reflects that on October 6, 1991, Mrs. Beverly Simon went to check on her mother's house at 9024 Forshey Street, New Orleans, Louisiana. Mrs. Simon's mother, Hattie Harris, had been ill and was staying with Mrs. Simon. When she arrived, she noticed that the window air conditioning unit in the front was missing, and the side gate was open. Mrs. Simon then went to a neighbor's house and called the police. Officers Michael Kilbride and Michael Montalbano responded to the call.
After the officers arrived on the scene, Officer Kilbride and Mrs. Simon entered the residence. The house had been ransacked. The air conditioning unit was found in front of the rear door which had been forced open. They searched the interior of the house for suspects but did not locate any at that time.
Officer Kilbride and Mrs. Simon then joined Officer Montalbano outside. In the backyard of the residence there was a metal shed. When the officers went to search the shed, Officer Kilbride observed a black male (the defendant) crouched down behind the shed, holding a brown bag. When the suspect saw the officers, he dropped the bag and jumped over the fence. As the suspect jumped over the fence, Mrs. Simon recognized the defendant and informed the officers that it was her nephew, Earl Peterson.
After the officers retrieved the brown bag, they showed Mrs. Simon the contents of the bag and asked if she recognized any of the objects. Mrs. Simon informed the officer that the articles came out of the residence. The bag contained two electrical outlets, some combs, a brown electrical extension cord, a yellow-wired trouble light, a red pipe wrench, a pair of pliers, a hammer handle, a pair of needle nose pliers, a screwdriver, a hammer head, some electrical appliances, hair conditioner, a clothes pin, a hair roller, and a pair of blue pants.
At trial, Mrs. Simon stated that her mother, Hattie Harris, owned the house on Forshey Street. Mrs. Harris and her deceased husband had bought the house after they were married. In fact, Mrs. Simon and her sister, the defendant's mother, were raised in that house. Mrs. Harris had maintained the house since her husband's death in 1970. The defendant had lived in the house with Mrs. Harris before and after his mother's death in 1983. However, Mrs. Harris put the defendant out of the house when he began getting into trouble. In recent years, *921 Mrs. Harris had become ill. Mrs. Harris had been in a nursing home for a short time but planned on returning to her house on Forshey Street. Thus, the house had been maintained and Mrs. Harris's furniture and other belongings were kept in the house.
The defendant's father, Darryl Peterson, testified on behalf of his son. Mr. Peterson testified that the defendant lived at the house on Forshey Street with his grandmother until the defendant and Mrs. Simon started to argue constantly.
On rebuttal, the state called Mrs. Hattie Harris. Mrs. Harris testified that she owned the house at 9024 Forshey Street. She further stated that she did not give the defendant permission to enter the house on October 6, 1991. She also identified the items found in the brown bag as her belongings which she had left in the house.
A review of the record reflects that there are no errors patent.
In his only assignment of error, the defendant contends that the evidence introduced by the state is insufficient to sustain a conviction for simple burglary. Specifically, the defendant argues that the evidence does not support the findings of (1) an unauthorized entry and (2) the intent to commit a theft or other felony with the structure.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. R.S. 15:438. R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
In order to support a conviction of simple burglary, the state must prove (1) there was an unauthorized entry; (2) the entry was made of a dwelling, vehicle, watercraft, or other structure, movable or immovable, and (3) such entry was made with the intent to commit a theft or other felony therein. R.S. 14:62; State v. Woods, 526 So.2d 443 (La. App. 4th Cir.1988).
Intent to commit a theft may be inferred from the circumstances surrounding the commission of the crime. State v. Pike, 426 So.2d 1329 (La.1983); State v. Robinson, 544 So.2d 444 (La.App. 4th Cir.1989), writ denied, 550 So.2d 626 (La.1989). A defendant's flight from the scene of the crime indicates consciousness of guilt, and as such, is one of the circumstances from which guilt may be inferred. State v. Patterson, 459 So.2d 714 (La.App. 4th Cir.1984); State v. Bell, 581 So.2d 384 (La.App. 4th Cir.1991).
In the present case, the defendant argues that his entry into the house cannot be unauthorized as he has an one-eighth interest in the property. Defendant contends that under Louisiana succession law, he is entitled to an one-eighth interest in the property. The defendant is correct in his assertion. Under Louisiana law, defendant and his brother would succeed to their mother's interest in her father's succession. Civil Code articles 882, 888. However, as the defendant's maternal grandfather died intestate, defendant's maternal grandmother, Hattie Harris, has a usufruct over all of the grandfather's share of the community property, including the house on Forshey Street. Civil Code article 890. Thus, defendant's interest in the property at the time of the crime was that of a naked owner.
Under Civil Code article 605, a naked owner cannot interfere in the rights of the usufructuary *922 in the enjoyment of the property. If a naked owner would attempt to interfere with the usufructuary's rights, the usufructuary has the right to seek legal recourse against the naked owner. Civil Code article 566.
Thus, even though the defendant arguably has a small interest in the house, he has no right to interfere in the use of the house by his grandmother. She has maintained the property for her use and enjoyment. Defendant had no right, at the time of the incident, to enter onto the property without his grandmother's permission. Therefore, defendant's entry into the house was unauthorized.
This Court has, on previous occasions, relied upon civil law concepts in determining whether a defendant's entry into a residence was unauthorized. In State v. Woods, supra, this Court used community property principles in determining that the defendant's entry into his estranged wife's apartment was unauthorized. The court noted that the apartment was in the wife's and a third party's names, and that the apartment was being used solely for the benefit of the wife and children. Thus, the rental paid on the apartment was not a community obligation, but the separate obligation of the wife. Therefore, the apartment was the wife's separate dwelling and the defendant had no proprietary interest in the apartment. The court affirmed the defendant's conviction for simple burglary.
The defendant in State v. Monley, 557 So.2d 319 (La.App. 4th Cir.1990) argued that because he and the victim were married at the time of the incident, his entry into the victim's house could not have been unauthorized. The defendant and the victim had lived together at the house until March of 1984 when the victim took the keys from the defendant. The defendant and the victim were married on June 8, 1985 but they never lived together after their marriage. The defendant went to the house on a regular basis to visit his children. However, the victim had asked the defendant not to come in the early morning or late at night.
On April 19, 1986, in the early morning hours, the defendant broke down the front door of the house. The victim testified at trial that she did not open the door for the defendant nor did she want him in the house that morning. This Court, in affirming the defendant's conviction for aggravated burglary, stated that as the defendant did not reside at the house and the victim testified that she did not give the defendant permission to enter, there was sufficient evidence to find an unauthorized entry. Monley, supra at 321.
Defendant also contends that the state failed to prove that he had the intent to commit a theft or other felony when he entered the house. The testimony produced at trial was sufficient to prove the defendant's intent to commit a theft. The air conditioning unit had been taken out of the front window and had been left at the back door, allowing the jury to infer that the burglar left the unit there when he heard Officer Kilbride and Mrs. Simon entering the house. Officer Kilbride also testified that he saw the defendant crouched down behind the shed. Such testimony would allow the jury to infer that the defendant was trying to hide from the officers and Mrs. Simon. Further, when the officers told the defendant to stop, the defendant jumped over the fence and ran away. As stated above, flight is a circumstance from which guilt may be inferred. In addition, Mrs. Simon and Mrs. Harris each identified the items found in the brown bag that the defendant had dropped as belonging to Mrs. Harris. The facts that the defendant had, in his possession, items which belonged to Mrs. Harris and which were left in the residence, and that the defendant ran away when approached by the officers support the jury's finding that the defendant had the intent to commit a theft.
This assignment of error is without merit.
For the foregoing reasons, the defendant's conviction and sentence are affirmed.