# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 03-655

**STATE OF LOUISIANA**

**VERSUS**

**CHET K. WHATLEY**

**********

APPEAL FROM THE
TWENTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF LASALLE, NO. 69,010
HONORABLE JOHN PHILIP MAUFFRAY  JR., DISTRICT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Billie Colombaro Woodard, Michael G. Sullivan, and Billy Howard Ezell, Judges.

**Woodard, J., concurs**.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

**David E. Stone**
**Attorney At Law**
**P. O. Box 165**
**Alexandria, LA 71309**
**(318) 445-4601**
**Counsel for: Defendant/Appellant**
**Chet K. Whatley**

**J. Reed Walters**

**District Attorney - 28th Judicial District Court**
**P. O. Box 1940**
**Jena, LA 71342**
**(318) 992-8282**
**Counsel for: Plaintiff/Appellee**
**State of Louisiana**

**Steven P. Kendrick**
**Attorney at Law**
**P. O. Box 1889**
**Jena, LA 71342**
**(318) 992-4107**
**Counsel for: Plaintiff/Appellee**
**State of Louisiana**

**Chet K. Whatley**
**Pro Se**
**9511 Hwy 127 South**
**Jena, LA 71342**

**EZELL, Judge.**

On June 3, 2002, the LaSalle Parish District Attorney's Office filed a bill of information charging Defendant, Chet Whatley, with simple criminal damage to property, violation of La.R.S. 14:56. At the close of a trial held on October 30, 2002, a six-person jury found him guilty as charged. Defendant represented himself at trial.

Subsequently, Defendant filed a motion for acquittal, which the trial court denied on March 4, 2003. On April 9, the court sentenced him to pay a $1,000 fine and serve one year at hard labor. On these latter dates, Defendant was represented by counsel. Said counsel now represents him on appeal.

Defendant now appeals his conviction and sentence, assigning five errors.

### FACTS

In April 2002, Defendant and his estranged wife, Natalie Whatley, were in the midst of divorce proceedings. Pursuant to those proceedings, that court had issued an interim order in October 2001, awarding use of a 1996 Cadillac El Dorado to Mrs. Whatley.

On April 13, 2002, Defendant went to Mrs. Whatley's residence and asked to use the Cadillac the next day. She refused to let him use it, so he called the sheriff's office. Once deputies arrived, they assessed the situation, then advised Defendant to leave. Defendant complied, but returned in the early morning hours of April 14, and again asked to use the Cadillac. Again, she refused.

Defendant then threatened to ram the pickup truck he was driving into the Cadillac. Shortly thereafter, Defendant's daughter saw the pickup ram into the Cadillac. She saw Defendant get out of the truck and leave the scene.

1

## ASSIGNMENTS OF ERROR NUMBERS ONE & THREE

In his first and third assignments of error, Defendant argues the evidence adduced at trial was insufficient to support his conviction. Such an argument must be addressed first, as a finding that the evidence was insufficient would result in an outright acquittal. *State v. Hearold*, 603 So.2d 731, (La.1992). The analysis for such claims is well-settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Regarding the present case, La.R.S. 14:56 states, in pertinent part:

> Simple criminal damage to property is the intentional damaging of any property of another, without the consent of the owner, and except as provided in R.S. 14:55, by any means other than fire or explosion.

The thrust of Defendant's argument is that at the time of the offense, he was co-owner of the Cadillac, with rights coextensive to those of Mrs. Whatley. Thus, he contends the State failed to prove the car belonged to "another," or that "the owner" did not consent to the damage.

The only evidence regarding ownership came in during the testimony of Mrs. Whatley. The court notes the relevant colloquy:

2

Q      The judgment that you are referring to - the judgment that allows you to use the vehicle - you had it between you and Chet.  You had use, possession and control of the car?

A      Right.  And I told him, I believe the 20th, we came to Court here.

        MR. KENDRICK:           Your Honor, may I approach?

        THE COURT:               Yes.

        MR. KENDRICK:           Thank you.

        THE COURT:      Please demonstrate the exhibit to Mr. Whatley.  And for the record, if it's already marked, with an identifying thing, please identify it for the record.

        MR. KENDRICK:           Certainly.   It is pre-marked as State's Exhibit 1.

        THE COURT:      Okay.  You can go off the record.

        OFF RECORD

        ON RECORD

        THE COURT:      Now we're on.

        MR. KENDRICK:           May  I  approach  the  witness, Judge?

        THE COURT:      Yes.

        MR. KENDRICK:           Ma'am, I have a document which has been pre-marked as State's Exhibit 1.  And I would ask that you identify that for me, please.

A      The judgment that I received whenever we come to Court.  And it was on the 18th of October that was where they had give me use of the car and the house.

Q      And this is a signed judgment?

A      Um-hmm.

Q      And this is the judgment to which you were referring to in the testimony?

A      Yes, sir.

        MR. KENDRICK:           All right, Your Honor, the State wishes to offer State's Exhibit 1.

3

THE COURT:     Any objections, Mr. Whatley?

MR. WHATLEY:  I don't guess.

THE COURT:     Okay.  Then, let it be filed.  Please tender it to the Clerk.

MR. KENDRICK:          Yes, sir.

. . . .

MR. KENDRICK:          The property which is the subject of that order is the house, the business and the car.  Isn't that correct?

A     Yes, sir.

Q     And that was all community property between you and Mr. Chet Whatley?

A     Yes, sir.  It still is.

Q     And that was all property which Judge Mauffray granted you exclusive use and control at a trial in October of 2001?

A     Yes, sir.

Q     After you showed the judgement, which is State's Exhibit 1 to the law enforcement, the deputies, what happened next?

A     Well, I didn't actually show them the judgment.  I told them that I had a judgment that I could show them.  And they said that that was no problem.  That they would tell Chet to leave.  And they went out there to the truck, where he was at, and they told him to leave and he got upset and drove off.  And the brown - the tan and blue truck that belonged to Dr. Hedrick.

This court in a civil case, with a similar scenario observed:

The state simply did not prove beyond a reasonable doubt Pam Rabalais took property "belonging to another."  Even assuming the evidence sufficiently established Pam removed the truck from Steve Rabalais' yard, the State nonetheless was required to prove the "thing of value" she took belonged to another.

The well-settled law of this State is that the rights of co-owners to the possession of property held in common are equal and co-extensive. *Butler v. Hensley*, 332 So.2d 315 (La.App. 4 Cir.1976).  The Louisiana Supreme Court long ago recognized:

4

Co-owners are owners *par mi et par tout*, of part and of the whole. Neither of two co-owners has the exclusive right to any determinate part of the common property.

Thus the Court stated in *Juneau v. Laborde*, 82 So.2d 693, 696, 228 La. 410, 418 (1955), that the "right of co-owners to possession of the property being equal and coextensive, neither becomes indebted to the other for his personal occupancy and enjoyment, save, probably, that a co-owner, who has been deprived of the right of possession by reason of his co-owner's exclusive occupancy, may claim damages from the date upon which he has demanded occupancy and has been refused by the possessor." But even then, a co-owner who is dissatisfied with the use to which the property is being put has his remedy by injunction **if the character is being changed or the assets wasted** and to the remedy of a partition if he is dissatisfied with the occupancy or possession exercised by his co-owner. *See Coon v. Miller*, 175 So.2d 385 (La.App. 2 Cir.1965). The law generally does not afford a criminal remedy for the taking of property held in common by one co-owner from another. Any contention that property so held in common "belonged to another" is insufficiently grounded *vis a vis* co-owners because each has the legal right to take and possess the object of the alleged theft.

In this case, Pam Rabalais testified she acquired an ownership interest in the object of the theft (the Chevy S-10 pickup) by virtue of an Act of Donation executed by her husband, Jason Rabalais, who was financially indebted to her for sums she loaned him prior to their marriage. . . .

The Act of Donation, albeit invalid to translate title to immovable property, evidenced Jason's intent to convey to his wife an interest in the truck to be held in "community." Further, the State offered no evidence to rebut Pam's testimony that she loaned Jason $18,500 and in payment of the loan he gave her equal interest in all the property listed separately in his name, including the Chevy S-10 pickup. Without instructions on what constitutes a valid "donation by manual gift," the jury understandably was ill-prepared to properly weigh the evidence. The burden to prove beyond a reasonable doubt the property belonged to "another" and not in any portion to Pam rests with the State. This burden it did not carry as a matter of law.

*State v. Rabalais*, 99-623, pp. 7-9 (La.App. 3 Cir. 1/26/00), 759 So.2d 836, 840-41. (emphasis added).

Although *Rabalais* was a theft case, we find its reasoning easily fits the present context, *i.e.*, criminal damage, as well. In both cases, the defendants and alleged victims were co-owners of the property at issue, in situations connected to their dissolving matrimonial regimes. Perhaps a more cogent point is that *Rabalais* clearly

5

indicates that one co-owner cannot be criminally liable for *taking* property from another co-owner. Thus, by analogy, such a co-owner cannot be criminally liable for *damaging* co-owned property.

The lower court discussed this issue during the hearing on Defendant's motion for acquittal:

> THE COURT: First of all, just let me say that - I mean that - that case that was cited also did not persuade me. Your case that you cited did not persuade me. Neither of those cases persuaded me one way or the other. And so far everything that you've said so far is right except your [sic] missing the essence of this. The essence of this is that the property is not necessarily the thing itself but the right to use it. That's what the property is. That's what the property right is. And if that which Ms. Whatley had the right to use was damaged by the damage of the thing - of the physical corporal [sic] thing itself, that's the interest that was invaded. And that's the interest that is protected by the statute. It's not just physical corporeal, you know, property rights as far as my analysis goes. Now, hey, it's like Steppenwolf, I've been wrong before. So, I don't know if I'm right or if I'm wrong, but I truly believe that I am right about this, that the essence of the offense was the invasion of the property right, the property right not of ownership but of use. They are two -
>
> MR. STONE: And, Your Honor, -
>
> THE COURT: - separate and distinct things and the statute specifically says without the consent of the owner. But, it's the owner of the right, not necessarily the owner of the thing, although the thing was damaged, it deprived the owner of the property right. And that was the same analysis made in that First Circuit Case. The right to use the property is separate and distinct from ownership and so, I -
>
> . . . .
>
> THE COURT: Okay. Okay. Mr. Kendrick, I take it you don't have anything to say because you don't need to say anything. Correct?
>
> MR. KENDRICK: That's correct, Judge. Only that we agree - I guess the opposite of Mr. Stone. We agree with your conclusion, maybe not the way that you get there. I think that he's probably guilty of it, regardless if there's a use, possession, and control order. And if you'll consider this analogy -
>
> THE COURT: I guess what I'm basing it on - let me tell you specifically, it's State versus Perry, 408 Southern Second 1358, and that page is 1663. Okay? A case cited in the context of this particular statute. Okay? Proceed.

6

MR. KENDRICK: Judge, I think that if we take the case out of the domestic arena and put it in, perhaps succession arena, if a man has nine brothers and sisters and inherited a piece of property and one brother that he should've got it all, and said none of these other people are gonna get their share, and burns down the property, I think that the 14:56 provides a remedy for that. I think it's criminal.

THE COURT: No, except but by fire and explosion. That wouldn't work. You'd have to go to the arson statute. But, basically, the elements are the same.

MR. STONE: Sure.

. . . .

MR. STONE: Just briefly, Your Honor. On the Perry case, I am well familiar with that case and I am aware that in that case the defendant as arguing that owner should be defined in accordance with using the terminology on - the last page, I guess.

THE COURT: Yes.

MR. STONE: ["]Contrary to the argument of the defendant, owner should be defined in accordance with the common meaning and understand the term not in accordance with the technical definition of ownership of a movable property, meaning the term is be gathered from the connection from which it is used and from the subject matter to which it is applied.["] And ownership - goes on later to say - ["]that is not always defined as the person who holds the record title to property.["] Again, I have no problem with what that case says. But here in this case, Perry must be limited to its facts. You had some people that were charged with damaging property owned by someone else. Not the defendant. At all. He had no ownership interest whatsoever. And in Perry he was arguing that the tenants had no right to come in and say, wait a minute, I didn't give him permission to damage my property and so the defense said, well the State failed to prove the essential element of without the consent of the owner because the actual owner of that lease hold property did not get into Court and say I did not give that defendant permission to damage my property. We've got a completely different situation. That case is totally in opposite, because we have an owner. He's sitting right next to me. He's an owner, an owner, an owner, an owner, until the community property is resolved, he sells his interest, he gives away his interest, that interest is taken from him in ownership to the corporals. [sic] And I think that the Court's reliance on Perry is exactly why we're here, Your Honor. And I think exactly why this case has no business in this Courtroom.

MR. KENDRICK: And, Judge, what - the we respond is this - he didn't - he took damage of the undivided interest of his ex-wife. He didn't have permission to damage that part of the interest. And not only do we rely on Alessi, we rely on that argument as well.

MR. STONE: Nothing further, Your Honor.

MR. KENDRICK: Nothing here, Judge.

THE COURT: Well, that's - the Court also agrees with that basically. You know, while there are civil remedies available, there's two civil remedies available that I'm aware of. It's not only purely civil remedy but there's also the quasi criminal - or, quasi civil remedy of contempt, a violation of the Court order. But, anyway, be all of that as it could've been, because of how I view the statute in the context of this particular case, the arguments made in the post-verdict judgment of acquittal motion are denied.

MR. STONE: Please note my objection.

The case cited by the State both on appeal and below, *State v. Alessi*, 258 La. 753, 247 So.2d 858 (1971), held that tenants who damaged their landlord's property were criminally liable for such actions. The court noted that the existence of potential civil remedies did not prevent the State from pursuing such a prosecution. *Id.* at 859.

A reading of the State's brief, and the memorandum the State filed below, suggests the State relied upon *Alessi* due to a misreading of *Rabalais*. In the motion for acquittal, Defendant cited *Rabalais* and quoted dicta from the concurrence, which commented that the matter belonged in civil court. Seizing upon this passage, the State cited *Alessi* for its language on the relationship between the availability of civil remedies, and criminal liability. However, we find the State was essentially arguing against dicta, as the comment made by the concurring judge in *Rabalais* was not the basis of the majority's holding or the concurrence.

The lower court's discussion of jurisprudence, cited above, also appeared to focus upon the same *Rabalais* dicta. In denying the motion for acquittal, the lower court explicitly relied upon *State v. Perry*, 408 So.2d 1358, 1363-64 (La.1982), which contained the following discussion:

> The trial court in its general charge to the jury gave the following instruction which the defendants complain of on appeal:

8

> "Without the consent of the owner, in the context of this statute, means without permission or approval of the one who has the right of residency, use or occupancy."

Defendants contend that this instruction was erroneous and that "owner" should be defined more restrictively. Specifically, it is the contention of the defendants that the term "owner" means the person who has the right of direct, immediate, and exclusive authority over a thing; the "owner" is that person who may use, enjoy, and dispose of a thing under the conditions established by law. See LSA-C.C. Art. 477.

During the state's case in chief the residents of each of the three homes that were vandalized testified that they did not consent to the damaging of their property. The defendants established that none of the residents who testified had record title to the houses which had been vandalized. Rather, the victims of these acts of vandalism were tenants or lessees merely possessing the property that was vandalized.

It is axiomatic that the state must prove every element of the crime with which the defendant in a criminal case is charged. An essential element of the crime of simple criminal damage to property is that the damage was done without the consent of the owner. Contrary to the argument of the defendants, "owner" should be defined in accordance with the common meaning and understanding of the term, not in accordance with the technical definition of ownership of immovable property. The meaning of the term is to be gathered from the connection in which it is used and from the subject matter to which it is applied. See LSA-R.S. 14:3. The term "owner" has been defined in many ways. See Black's Law Dictionary (4th Edition). "Owner" may be defined as the person in possession of a thing or the one with dominion, control and management of a thing at the time in question. "Owner" is not always defined as the person who holds the record title to property.

In this case, proof that damage to a house was inflicted without the consent of the person living in the house is sufficient to establish lack of consent of the owner. Additionally, we note that lack of consent of an owner to malicious vandalism of an owner's property can often be inferred circumstantially from the evidence presented, and such is the only reasonable inference under the evidence presented in this case.

Under the circumstances presented by this case, we think the trial court's definition of "owner" as including persons with the right of use, residency or occupancy was not erroneous. The instruction to the jury fairly dealt with the issue of proof of lack of consent. It is well established that the ruling of a trial court on an objection to a portion of his charge to a jury will not be disturbed unless the disputed portion, when considered in connection with the remainder of the charge, is shown to be erroneous and prejudicial. *State v. Dardar*, 353 So.2d 713 (La.1977); *State v. George*, 346 So.2d 694 (La.1977); *State v. Walker*, 204 La. 523, 15 So.2d 874 (1943); *State v. Davis*, 154 La. 295, 97 So. 449 (1923). Under the facts presented in this case, we do not find the

disputed portion of the charge to the jury to be erroneous or prejudicial. This assignment of error lacks merit.

While *Perry* and *Rabalais* are not in direct conflict with one another, they do establish two separate routes for resolving the present case. *Perry* did not rely on the Civil Code, *Rabalais* did. If, as in *Rabalais*, a co-owner is not criminally liable for the taking of co-owned property, then it seems such a co-owner would not be liable for damage to co-owned property. One possible distinguishing point, noted by the State and the lower court, is that the court had issued an interim order in October 2001. The order awarded her *use* of the car at issue. The lower court reasoned that by damaging the car, Defendant had damaged her right to use the car, as established by the court order. Since Defendant and Mrs. Whatley were still co-owners at the time of the offense, *Rabalais* would dictate an acquittal.

On the other hand, *Perry* held that, for purposes of La.R.S. 14:56, right of use is equivalent to ownership. Also, it appeared to divorce criminal-law definitions from those of civil law, at least in situations where the direct victims are lessees. However, as Defendant points out, the present case and *Rabalais* differ from *Perry* and *Alessi,* because in the latter pair of cases the defendants clearly had no ownership interest in the damaged property. Thus, in those cases, the question to be resolved was whether lessee victims had ownership interests for purposes of the La.R.S. 14:56. Also, *Perry* could be seen as part of a separate *genera* of jurisprudence that treats lessees or possessors as "owners" in a criminal-law context. *See*, *e.g.*, *State v. McClanahan*, 262 La. 138, 262 So.2d 499 (1972), and *State v. Lewis*, 49 La.Ann. 1207, 22 So. 327 (1897).

However, other courts have addressed issues of civil-law ownership and use in the criminal-law context. For example, in *State v. Peterson*, 623 So.2d 919 (La.App. 4 Cir. 1993), a defendant claimed he could not be guilty of simple burglary

10

of his grandmother's house. He argued that his one-eighth ownership interest in the house gave him authority to enter, thus, said entry was not "unauthorized" as defined by the simple burglary statute.

The fourth circuit acknowledged the defendant's one-eighth ownership interest, but observed the victim had usufruct of the house. Relying on the Civil Code, the court stated the defendant's naked ownership interest did not entitle him to interfere with the victim's usufructuary rights. *Id.*

We find that *Peterson* highlights the factor that distinguishes the present case from *Rabalais*. The court order awarding use of the car to the victim, and preventing either party from alienating it, placed Defendant in a position analogous to that of the *Peterson* defendant, who had naked co-ownership. Meanwhile, the victim here was in the same position as the victim in *Peterson*, who had usufruct of the home at issue in that case. Therefore, Defendant's co-ownership rights, expressly limited by the court's prior order, did not entitle him to interfere with the victim's use of the car. Thus, we find the Defendant's argument that his status as co-owner immunized him from criminal liability for simple criminal damage lacks merit.

His argument implies that some other elements were also unproven, but we note the victim testified she did not consent to Defendant's act of damaging the car. Also, Jessica LeAnne Whatley testified she saw her father, the Defendant, commit the act of driving into the car at issue.

In his first assignment of error, Defendant also argues the State failed to prove the damage exceeded $500.00. We find this argument is meritless, as the State introduced an invoice showing the repairs cost $5,161.62. Also, although the record lacks evidence of the condition of the car before the offense, Mrs. Whatley's testimony indicated the repairs were made for damage that resulted from Defendant's offense, as shown by the following colloquy:

11

MR. KENDRICK: May I approach, Judge?

THE COURT: Yes.

MR. KENDRICK: Ma'am, I have a document which I have pre-marked as State's Exhibit 2 and I would ask for you to identify that for me, please.

A    Yeah. That's the car. That's the Cadillac El Dorado.

Q    Okay.

A    Also, it has some front damage up here, too.

Q    Okay. But, this accurately reflects the damage on the car right after the incident?

A    It was in a probably in a hour - by the time we called the law, it was about one o'clock. But, by the time they came out, and had to come back to town to get the camera to come back and take a picture. I mean, this come out of the police camera.

Q    Okay. But, you actually observed what is being shown in these pictures and you can tell this jury, you know, I didn't personally take the pictures but this does represent the condition of the car after -

A    Right.

Q    - it happened. Isn't that correct?

A    Right.

MR. KENDR1CK: Your Honor, I'd like to offer State's Exhibit 2 and also show the picture to the jury at this time.

THE COURT: Any objection?

MR. WHATLEY: No, sir.

THE COURT: Okay. Let it be filed first.

MR. KENDRICK: Yes, sir.

THE COURT: But, since it is an Exhibit, tender it to the Clerk, the Clerk will endorse it as filed. At any appropriate time, any Exhibit that's been introduced can be demonstrated to the jury.

12

MR. KENDRICK: Thank you, Judge. Ma'am, the gentleman who you're testifying about, Chet Whatley, do you see him in the court room today?

A    Yes, sir. He's at the other table.

Q    Thank you. Mr. Whatley did not cause the damage by exploding it or by burning it? Isn't that correct?

A    No. It did damage on the front, right-hand side of the tan truck.

MR. KENDRICK: Your Honor, may I approach?

THE COURT: Yes.

MR. KENDRICK: Ma'am, I have a document which I have pre marked as State's Exhibit 3, and I'd ask that you identify that for me, please.

A    This is the what Progressive was going to fix and pay the - they sent me this part of the check to pay for my '55. And it shows the $250 deductible but I only had to pay $150. So, all together, this is what they paid.

Q    This document demonstrates what Progressive paid on your claim?

A    On my claim. Yes.

Q    I also have a document which I have pre-marked as State's Exhibit 4 and I would like for you to identify that for me, please.

A    This is where I sent the car to Antley's Collision. And where I gave them my check and my deductible check and the total balance due to fix the car.

Q    Okay. And if I - if you read these two exhibits in conjunction with each other, State's Exhibit 4 is the bill from the collision center.

A    Right.

Q    And the State's Exhibit 3 is the insurance paperwork to pay the claim.

A    Right.

MR. KENDRICK: Your Honor, I would like to offer State's Exhibit 3 and State's Exhibit 4 at this time.

THE COURT: Any objection?

13

MR. WHATLEY: No, sir, Your Honor.

THE COURT: Let them be filed.

Thus, we find the Defendant's first and third assignments lack merit. We will proceed to discuss the remaining assignments.

**ASSIGNMENT OF ERROR NUMBER TWO & ERROR PATENT**

In his second assignment, Defendant contends the trial court failed to make an adequate determination regarding whether he validly waived his right to counsel.

In our review of the record for errors patent, we discovered an error which occurred at arraignment. Because discussion of this error is related to the issue raised in this assignment of error, we will discuss them together.

Louisiana Code of Criminal Procedure Article 513 states:

> In the case of an offense punishable by imprisonment, when the defendant appears for arraignment without counsel, the court shall inform him before he pleads to the indictment of his right to have counsel appointed to defend him if he is indigent. When a defendant states under oath that he desires counsel but is indigent, and the court finds the statement of indigency to be true, the court shall provide for counsel in accordance with the provisions of R.S. 15:145 to the defendant before he pleads to the indictment.

The Defendant in this case was not represented by counsel at arraignment and the trial court did not comply with the requirements of Article 513. Recently, in a case where a defendant was not afforded counsel at arraignment, this court examined whether arraignment is a critical stage of the proceedings. In doing so, this court stated:

> In Louisiana, there is no confrontation of witnesses or presentment of evidence at arraignment. Additionally, available defenses are not lost if not pled at arraignment. For example, La.Code Crim.P. art. 561 provides that a "defendant may withdraw a plea of 'not guilty' and enter a plea of 'not guilty and not guilty by reason of insanity,' within *ten days after arraignment*. Thereafter, the court may, for good cause shown, allow such a change of plea at any time before the commencement of the trial." (Emphasis added). La.Code Crim.P. art. 726 which permits a defendant, who intends to introduce

14

testimony relating to a mental disease, defect, or other condition bearing upon the issue of his mental state required for the offense charged, to notify the district attorney of such intention no later than ten days prior to trial or such reasonable time as the court may permit. Moreover, motions to quash are required to be filed after arraignment. See La.Code Crim.P. arts. 521 and 535. Therefore, the present case is distinguishable from *Hamilton* [*v. Alabama*, 368 U.S. 52, 82 S.Ct. 157 (1961).

Further, the present case is distinguishable from [*State v.*] *Fraychineaud* [, 620 So.2d 338 (La.App. 5 Cir. 1993)]. Fraychineaud was not represented by an attorney at arraignment or at trial and the court found reversible error. The court did not distinguish whether it would have reached the same result if the attorney had not been present at arraignment but had been present at the trial. In this case, the Defendant had appointed counsel at the time of arraignment. The record indicates that on August 29, 2001, the trial court ordered no bond be set and referred the case to the Indigent Defender Board. The day after arraignment, November 6, 2001, the Defendant's appointed counsel filed a Motion for Discovery and Inspection and Motion for Bill of Particulars. On January 2, 2002, the Defendant's counsel requested discovery and a fifteen day extension to file any motions. Moreover, he also participated in all phases of the trial and sentencing.

Consequently, arraignment was not a critical stage requiring the presence of counsel. Therefore, this assignment of error is denied.

*State v. Tarver*, 02-973, 02-974,02-975, pp. 9-10 (La.App. 3 Cir. 3/12/03), 846 So.2d 851, 857-58.

We find *Tarver* is distinguishable in that the Defendant in this case was not afforded counsel at trial. More on point is *State v. Fraychineaud*, 620 So.2d 338 (La.App. 5 Cir. 1993). As mentioned in *Tarver*, Fraychineaud was not represented by counsel at arraignment or trial. In addressing the defendant's claim that he was not informed of his right to counsel and did not waive that right, the fifth circuit stated:

Since the defendant was faced with the possibility of imprisonment he was constitutionally entitled to counsel. *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). Accordingly, LSA-C.Cr.P. art. 513 mandates that the court inform a defendant of his right to counsel before he pleads in answer to an indictment for an offense punishable by imprisonment. While the defendant may waive the right to counsel, the waiver must be knowing and voluntary and the record must affirmatively reflect that the

15

defendant was advised of the right and elected to waive it. LSA-C.Cr.P. art. 514; *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). This failure of the trial court to inform defendant of his right to counsel and to secure a valid waiver constitutes reversible error.

*Id*. at 340 (footnote omitted).

Unlike the situation in *Tarver*, the Defendant in the present case was not represented by counsel at either arraignment or trial, which, under the analysis employed in *Tarver*, supports a finding that arraignment was a critical stage in this case.

In the case sub judice, the right to counsel was discussed immediately before jury selection:

> THE COURT: Okay. Very good, then. Okay. Are we ready to have the jury come back in?
>
> MR. KENDRICK: No, sir, Judge. I think that under the Third Circuit jurisprudence, I think that at this time it would be appropriate if the Court would make a determination whether Mr. Whatley has validly waived his right to counsel. I've taken into account the factors in the State versus Hayes case and it will-
>
> THE COURT: I see the gentleman present. I see that he's ready. I believe that's a correct statement, then. You're ready to proceed and you're gonna represent yourself. Right?
>
> MR. WHATLEY: Yes, sir.
>
> THE COURT: That's what I thought. That's giving the tenor of his demeanor and what have you, I figured that he's ready to represent himself. That is correct?
>
> MR. WHATLEY: Yes, sir.
>
> THE COURT: Okay. Now, we're ready to call the jury in?
>
> MR. KENDRICK: Sir?
>
> THE COURT: Are we ready to call the jury in? Are there any other preliminary matters?
>
> MR. KENDRICK: Yes, Your Honor. There - the requirements of Hayes require a determination of literacy competency -

16

understanding (inaudible) - much like the warnings, Judge, that Your honor -

THE COURT:  Okay.

MR. KENDRICK:  - makes in your colloquy.

THE COURT:  Mr. Whatley, see this little short eight and a half by 11 piece of paper?

MR. WHATLEY:  This one right here, Your Honor?

THE COURT:  Yes, sir.

MR. WHATLEY:  Yes, sir.

THE COURT:  What - the big writing at the top - what does that say?

MR. WHATLEY:  Juror questions dash criminal cases.

THE COURT:  And then the next line? In smaller print?

MR. WHATLEY:  Name, mailing address, marital status, spouse's name, occupation, spouse's occupation.

THE COURT:  I think Mr. Whatley is literate. I make a factual determination that he reads the American language - That he reads the English language on a piece of paper. And, of course, you understand, basically, what the general juror questions is. [sic]  You can tell me what that means in your own language.

MR. WHATLEY: I'm sorry, Your Honor?

THE COURT: Your general juror questions - you know what that means?

MR. WHATLEY:  Yes, sir.

THE COURT:  And it means to you?

MR. WHATLEY:  That I can question the jurors?

THE COURT:  Well, it means that. But, this is what I'm gonna ask them. Is that correct?

MR. WHATLEY:  Yes, sir.

THE COURT:  Okay. Are you nervous, sir?

MR. WHATLEY:  Yes, sir.

17

THE COURT: Well, I kind of thought he was. Okay.

MR. WHATLEY: Can I say something, Your Honor? I'm sorry.

THE COURT: Yes.

MR. WHATLEY: I just feel a little put down having my daughter here.

THE COURT: Well, I understand that. But, it's not the Court's choice to call witnesses.

MR. WHATLEY: Yes, sir. I understand.

THE COURT: It's not my case at all. I'm just kind of like the referee between the State and you. You understand that?

MR. WHATLEY: That's great. I just wanted you to know that.

THE COURT: Okay.

MR. WHATLEY: I'm sorry.

THE COURT: No. That's no problem.

MR. WHATLEY: Yes, sir.

THE COURT: Okay. And I think that Mr. Whatley is competent. I think he's literate. I think he's competent to represent himself in this particular matter. I think he understands, you know, the criminal prosecution. And I think he understands that we're gonna be selecting a jury and we're gonna have a prosecution. But, you have a right to put on evidence first. He's got a right to put on evidence. And then you've got a right to rebut any evidence that he puts on.

MR. KENDRICK: And he should know specifically about the right that he does have a fundamental right to counsel -

THE COURT: Oh, yes.

MR. KENDRICK: - and that he would be at a disadvantage at not having one.

THE COURT: Certainly. Certainly. Of course, Mr. Whatley, you do understand that everybody in a criminal prosecution has a right to hire the attorney of their choice. You understand that?

MR. WHATLEY: Yes, sir. I wished I could, Your Honor.

THE COURT: Okay. And only if a person is indigent, in other words, if you have no income, no means, nothing you could mortgage,

18

nothing you can sell, - if you are in that position, then, of course, and if you qualify, then, of course, an attorney could be appointed to represent you if you qualify.

MR. WHATLEY:  Yes, sir.

THE COURT:  And, of course, you understand since you haven't been trained in the law, that, of course, that a person who has been trained in law should be better able to do a better job than you. You understand that, too?

MR. WHATLEY:  Yes, sir. I understand that.

THE COURT:  Okay. And you realize all of that, but, realizing all of that, you're still here. And you're still gonna represent yourself. Correct?

MR. WHATLEY: Yes, sir.

MR. KENDRICK: Okay.  Thank you, Judge.  I think that's -

THE COURT: Is there anything else, Mr. Kendrick?

MR. KENDRICK: No, sir.

THE COURT: Okay. Mr. Whatley, is there any other preliminary matters that you want to address? You've already addressed the issue of your daughter being present. And I think your daughter was removed from the courtroom.

MR. WHATLEY: Yes, sir. I want to appreciate y'all letting me do this on my own behalf. If I had any money whatsoever, I would've hired an attorney, sir. I don't have anything no more.

THE COURT: Well, -

MR. WHATLEY: I got a heart and a soul. That's about all I got left.

THE COURT: Okay. I'm sure that you have undivided interest in property. I'm sure you own something, sir.

MR. WHATLEY: Yes, sir, but -

THE COURT: I know -

MR. WHATLEY: - it ain't got no value to me no more.

THE COURT: Well, I know it might not have a value to you, but, it's got a value to a banker.

19

MR. WHATLEY: Yes, sir.

THE COURT: And that's part of the criteria for appointed counsel. Do you understand?

MR. WHATLEY: Yes, sir. I understand.

THE COURT: Okay.

MR. KENDRICK: And I think we can stipulate, Judge, that he was advised - that he was to obtain counsel at arraignment within 15 days and -

THE COURT: Within seven.

MR. KENDRICK: - within seven - and has never applied for counsel in this case.

THE COURT: Well, that's - that would be a correct statement.

MR. WHATLEY: Your Honor?

THE COURT: Would it be a correct statement, Mr. Whatley, in this particular case?

MR. WHATLEY: I would -

THE COURT: When you were arraigned I gave you a scheduling sheet? And I did point out the fact that within seven days, that's the time you apply for an attorney or hire one. Is that correct?

MR. WHATLEY: I'll assume that's correct, Your Honor. I contacted Kisatchie in Jonesville, Louisiana. And they sent me a notice where the [sic] couldn't represent me.

THE COURT: Well, no. They couldn't represent you because that's - they represent people in civil cases, not criminal cases.

MR. WHATLEY: Yes, sir.

THE COURT: We a public defender. [sic]

MR. WHATLEY: Yes, sir.

THE COURT: He represents people in criminal cases.

MR. WHATLEY: Yes, sir.

THE COURT: If they qualify.

20

MR. WHATLEY: Yes, sir. I talked to the State attorney. And I thought he was gonna contact me, but he never did. He talked to me. I'm sorry.

THE COURT: The State attorney?

MR. WHATLEY: Yes, sir.

THE COURT: Who is that?

MR. WHATLEY: He was here yesterday. I don't know his name, Your Honor.

THE COURT: Oh, no. He's a public defender. That's Mr. Kutch - Joe Kutch.

MR. WHATLEY: Well, I believe that's the man.

THE COURT: And you also spoke to Mr. Paul Lemke. From Jonesville - from Harrisonburg.

MR. WHATLEY: Yes, sir. I just spoke to him.

THE COURT: Yes. He's not a state man. He's just an attorney that people hire to represent them. Okay.

MR. WHATLEY: Yes, sir.

MR. KENDRICK: But, despite all of that, you do wish to proceed today? That is-

MR. WHATLEY: Yes, sir. I'm ready.

THE COURT: Okay.

MR. KENDRICK: Judge, we're ready for the jury to come back in.

THE COURT: Okay. Well, let's do it. Instruct them that when they come in that the prospective members of the jury -

We find the above colloquy is problematic for a number of reasons. First of all, it includes strong indications Defendant was indigent and desired counsel, e.g., "Yes sir. I wished [sic] I could, Your Honor," and "If I had any money whatsoever, I would've hired an attorney, sir. I don't have anything no more." Also, the record reveals Defendant attempted to directly contact indigent counsel on his own.

21

We note this court's holding in *State v. Hayes*, 95-1170, pp. 4-5 (La.App. 3 Cir. 3/6/96), 670 So.2d 683, 685-86 cited by both parties. That case explained:

> Before being allowed to represent himself, a criminal defendant must knowingly and intelligently waive his constitutional right to counsel. *State v. Mitchell*, 580 So.2d 1006 (La.App. 3 Cir.1991), *writ denied*, 613 So.2d 969 (La.1993).
>
> A criminal defendant is guaranteed the right to counsel by both the state and federal constitutions. U.S. Const. amend. VI; La. Const. art. I, § 13. Absent a knowing and voluntary waiver of the right to counsel, no person may be imprisoned unless represented by counsel at trial. *State v. Smith*, 479 So.2d 1062 (La.App. 3 Cir.1985), citing *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).
>
> Before a defendant may waive his right to counsel, the trial court must determine whether the defendant's waiver of counsel is intelligently and voluntarily made, and whether his assertion of his right to represent himself is clear and unequivocal. *State v. Hegwood*, 345 So.2d 1179 (La.1977). The determination of whether there has been an intelligent waiver of the right to counsel depends upon the facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. *State v. Harper*, 381 So.2d 468 (La.1980). Although a defendant should be made aware of the dangers and disadvantages of self-representation, there is no particular formula which must be followed by the trial court in determining whether a defendant has validly waived his right to counsel. *State v. Carpenter*, 390 So.2d 1296 (La.1980). However, the record must establish that the accused knew what he was doing and that his choice was made "with eyes open." *Id.* at 1298, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
>
> The Third Circuit Court of Appeal has repeatedly required the trial court meet the following requirements in determining whether a defendant has validly waived his right to counsel: first, determine a defendant's literacy, competency, understanding and volition, i.e. was defendant's waiver of counsel made voluntarily and intelligently; and second, warn the defendant of the dangers and disadvantages of self-representation, so that the record establishes that the defendant knew what he was doing. *Mitchell*, 580 So.2d 1006; *Smith*, 479 So.2d 1062; *State v. Adams,* 526 So.2d 867 (La.App. 3 Cir.1988); *State v. Sepulvado*, 549 So.2d 928 (La.App. 3 Cir.1989); and *State v. Bourgeois*, 541 So.2d 926 (La.App. 3 Cir.1989), *writ denied*, 572 So.2d 85 (La.1991).

The court went on to reverse the conviction and remand the case, and ordered the lower court to conduct a hearing on the defendant's possible indigent status, in accordance with La.R.S. 15:147.[1]  *Id.*

In a more recent case, this court explained:

> The record here shows that the trial court did not look into the voluntariness and intelligence of the defendant's waiver of counsel, or warn the defendant of the dangers and disadvantages of self-representation.  The record indicates that, because counsel had been appointed to assist the defendant prior to his request to represent himself with assistance, the trial court thought that the defendant had waived his right to counsel.  However, the defendant informed the trial court that he had not meant to waive his right to counsel and that he only wanted to be involved in his defense.  Therefore, we must determine whether the defendant actually waived his right to counsel and, if a waiver occurred, whether the waiver was adequate.

*State v. King*,  96-1286, p. 5 (La.App. 3 Cir. 10/8/97), 702 So.2d 814, 816-17 (footnote omitted).

In *King*, the defendant proceeded to trial with counsel sitting in an advisory capacity. Relying on *Hayes* and other jurisprudence, the court reversed and remanded the case, noting, "The trial court failed to make a meaningful inquiry into the voluntariness and intelligence of the waiver and failed to warn the defendant about the dangers and disadvantages of self-representation.  Therefore, any waiver that may have arisen under these facts was inadequate." *Id.* at 818.

It is noted that the lower court briefly discussed the possible value of Defendant's property.  That portion of the colloquy suggests the court made a determination that Defendant was not in fact indigent, without conducting an indigency hearing as required by La.Code Crim.P. art. 513 and La.R.S. 15:147.

Additionally, we find the trial court's determination that Defendant had validly waived counsel rested in part on its belief that it had advised him of his right

---

[1]La.R.S. 15:147 requires an inquiry and determination regarding indigency "not later than arraignment" and sets procedures to follow if such a determination is made.

at arraignment. However, as already pointed out in the error patent discussion, the record of arraignment shows the lower court did not advise Defendant of his right to counsel. In discussing the arraignment, the court mentioned giving Defendant a "scheduling sheet," but it is not clear whether the sheet contained any information regarding the right to counsel, and the arraignment record does not show that any such schedule or form was filed into the record, thus it is not available for appellate review.

We note *Hayes* is factually distinguishable, because the judge in that case refused to appoint trial counsel for the defendant. However, we find Defendant in the present case is in a similar position to Hayes. In the case sub judice, the trial court apparently made a summary decision Defendant was not indigent, or simply ignored Defendant's indications that he wanted a lawyer but did not have sufficient funds to hire one. The Defendant retained counsel after the trial, as appellate counsel, David Stone, also represented him at the post-trial hearing on the motion for acquittal, and sentencing. It is unclear how counsel came to represent Defendant, thus it is not clear whether or not Defendant is factually indigent. For example, it is possible a family member stepped forward with funds after the trial. If this is the case, Defendant himself could still qualify as indigent. *See, e.g., State v. Frank*, 99-553 (La. 1/17/01), 803 So.2d 1.

Further, in the context of the error as assigned, Defendant's statements that he would proceed without counsel, even thanking the court for "allowing" him to do so, merely serve as indications Defendant did not understand his right to have counsel appointed. Simply put, the overall colloquy suggests Defendant did not understand his rights. Further, although the court conducted a clear and practical inquiry into Defendant's literacy by having him read in open court, there was no further inquiry into his education or background, or the relative complexity of the

24

case. As shown by the *Jackson* review in the previously-discussed assignments, the issue of co-ownership gave this case nuances that Defendant, a layman, may not have appreciated. As the lower court did not inquire into these factors or similar issues, it is clear the trial court did not make a sufficient inquiry into whether Defendant knowingly and intelligently waived his right to obtain trial counsel.

Further, the ultimate result of the colloquy was that Defendant proceeded without counsel. In the context of the error patent analysis, this lack of representation gave rise to reversible error, pursuant to La.Code Crim.P. art. 513 and *Fraychineaud*.

Considering the above, we find the trial court did not comply with La.Code Crim.P. art. 513 and the Defendant was not represented at critical stages of trial. Thus, we reverse Defendant's conviction and remand the case for re-arraignment of the Defendant after the lower court complies with La.Code Crim.P. art. 513.

This result renders the fourth assignment moot, as it alleges the sentence is excessive. However, we will discuss the fifth assignment, because it involves an error patent.

**ASSIGNMENT OF ERROR NUMBER FIVE & ERROR PATENT**

The bill of information charges the Defendant with simple criminal damage to property in excess of $500, in violation of La.R.S. 14:56. The Defendant notes that pursuant to La.Code Crim.P. art. 470, if the value, price or amount of damage is essential to the charge or to determine the grade of the offense, the amount must be contained in the bill of information. The three grades of simple criminal damage to property are damage less than $500, $500 but less than $50,000, and $50,000 or more. *See* La.R.S. 14:56. Thus, the bill is defective as it does not allege with which of the upper two grades the Defendant is charged. *See State v. Upchurch*, 00-1290 (La.App. 5 Cir. 1/30/01), 783 So.2d 398; *See also State v. Breaux*, 96-1516 (La.App.

25

3 Cir. 4/30/97), 693 So.2d 326 (bill found deficient where amount of damage not stated).

It is unnecessary to discuss how the error would affect the conviction and sentence in this case because the court has found that the conviction and sentence be reversed. However, the case is remanded to give the State the opportunity, before proceeding further, to amend the bill to properly charge an offense. *See Breaux*, 693 So.2d 326, and *State v. Bass*, 509 So.2d 176 (La.App. 1 Cir. 1987).

## CONCLUSION

Defendant's conviction and sentence are reversed and remanded for proceedings in accordance with this opinion. Before proceeding further, the State is given the opportunity to amend the bill of information to properly charge an offense.

**REVERSED AND REMANDED WITH INSTRUCTIONS**.