# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 11-1404

STATE OF LOUISIANA

VERSUS

ORDESTO MARANDO TOUSSAINT

**\*\*\*\*\*\*\*\*\***

## APPEAL FROM THE
## THIRTEENTH JUDICIAL DISTRICT COURT
## PARISH OF EVANGELINE, NO. 84199-FA
## HONORABLE JOHN LARRY VIDRINE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\***

## JAMES T. GENOVESE
## JUDGE

**\*\*\*\*\*\*\*\*\***

Court composed of James T. Genovese, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED.**

Mark O. Foster
Louisiana Appellate Project
1214 Ridge Vista Court
Lawrenceville, Georgia 30043
(318) 572-5693
COUNSEL FOR DEFENDANT/APPELLANT:
    Ordesto Marando Toussaint

Trent Brignac
District Attorney, Thirteenth Judicial District
Julhelene E. Jackson, Assistant District Attorney
Post Office Drawer 780
Ville Platte, Louisiana 70586
(337) 363-3438
COUNSEL FOR APPELLEE:
    State of Louisiana

**GENOVESE, Judge.**

In this criminal case, Defendant, Ordesto Marando Toussaint, was convicted by a jury of second degree murder, simple arson with damages over $500.00, and theft of a motor vehicle over $500.00. He has appealed, alleging trial court error in denying his motion to suppress and in not considering his trial objections concerning his defense counsel. For the following reasons, we affirm Defendant's conviction and sentence for second degree murder, reverse his arson and theft convictions, vacate his arson and theft sentences, and remand the matter for further proceedings.

## FACTS AND PROCEDURAL HISTORY

On May 11, 2010, Defendant killed Elizabeth Fontenot in Evangeline Parish by striking her in the head several times with a cinder block and then took the vehicle she had been operating and set it on fire. On July 6, 2010, Defendant was charged by grand jury indictment with second degree murder, a violation of La.R.S. 14:30.1; simple arson, a violation of La.R.S. 14:52; and, theft of a motor vehicle, a violation of La.R.S. 14:67.26. Defendant entered a plea of not guilty on all charges on July 8, 2010, and subsequently filed a motion to suppress the statements given by him to the investigating officers. The trial court denied Defendant's motion to suppress, finding the statements to have been freely and voluntarily made and admissible at trial.

On April 8, 2011, a jury found Defendant guilty of second degree murder, simple arson with damages over $500.00, and theft of a motor vehicle over $500.00. Defendant was sentenced on June 16, 2011, as follows: 1) second degree murder—life without benefit of parole, probation, or suspension of sentence; 2) simple arson—ten years at hard labor to run concurrently with his theft of a motor vehicle conviction and consecutively to his second degree murder

conviction; and, 3) theft of a motor vehicle—five years at hard labor to run concurrently with his simple arson conviction and consecutively to his second degree murder sentence.

Defendant appealed his convictions and sentences and is now before this court asserting two assignments of error. He contends that the trial court erred in denying his motion to suppress and in not considering his trial objections concerning defense counsel. For the reasons that follow, we affirm the trial court's denial of Defendant's motion to suppress and find that Defendant's claims regarding defense counsel lack merit.

**ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find an actionable error patent in that the grand jury indictment is defective as to the charges of arson and theft.

The bill of indictment provides, in pertinent part:

IN HERE, the Grand Jurors of the Thirteenth Judicial District, State of Louisiana, on the 6th day of July, 2010, duly empanelled and sworn, in and for the body of the Parish of EVANGELINE in the name and by the authority of the said State, upon their Oath, charges that, in the Parish of EVANGELINE, aforesaid, and within the jurisdiction of the Thirteenth Judicial District Court of Louisiana, then and there being, committed the offense(s) of:

ORDESTO MARANDO TOUSSAINT committed the offenses(s) of

Count #1: Second Degree Murder La.R.S. 14:30.1

Count #2: Simple Arson La.R.S. 14:52

Count #3: Theft of Motor Vehicle La.R.S. 14:67.26

in the Parish of Evangeline in that:

Count #1: Ordesto Toussaint, on or about May 11, 2010, committed [S]econd [D]egree [M]urder of Elizabeth Fontenot

2

Count #2: Ordesto Toussaint, on or about May 11, 2010, committed the offense of Simple Arson and did intentionally damage by any explosive substance or the setting fire to any property of another, without the consent of the owner

Count #3: Ordesto Toussaint, on or about May 11, 2010, committed the offense of Theft of a Motor Vehicle by the taking of a motor vehicle, which belongs to another, either without the owner's consent or by means of fraudulent conduct, practices, or representations, with the intention to permanently deprive the owner of the motor vehicle.

As to the arson and theft charges, La.Code Crim.P. art. 470 states that the value need not be alleged in the indictment unless it is essential to the charge or to determine the grade of the offense. While La.Code Crim.P. art. 470 does not require that an indictment include a specific monetary value, the allegations in the indictment must be sufficient to determine the grade of the offense.

Louisiana Revised Statutes 14:52 sets forth the penalty for simple arson and provides in pertinent part:

B. Whoever commits the crime of simple arson, where the damage done amounts to five hundred dollars or more, shall be fined not more than fifteen thousand dollars and imprisoned at hard labor for not less than two years nor more than fifteen years.

C. Where the damage is less than five hundred dollars, the offender shall be fined not more than twenty-five hundred dollars or imprisoned with or without hard labor for not more than five years, or both.

Louisiana Revised Statutes 14:67.26 sets forth the penalty for theft of motor vehicles and provides in pertinent part:

C. (1) Whoever commits the crime of theft of a motor vehicle when the misappropriation or taking amounts to a sum of one thousand five hundred dollars or more shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than three thousand dollars, or both.

(2) Whoever commits the crime of theft of a motor vehicle when the misappropriation or taking amounts to a sum of five hundred dollars or more but less than one thousand five hundred dollars shall be imprisoned, with or without hard labor, for not more than five years, or may be fined not more than two thousand dollars, or both.

3

(3) Whoever commits the crime of theft of a motor vehicle when the misappropriation or taking amounts to a sum of less than five hundred dollars shall be imprisoned for not more than six months, or may be fined not more than one thousand dollars, or both.

Pursuant to La.Code Crim.P. art. 470, an essential element to be included in the charging instrument for both simple arson and theft of a motor vehicle is the value and/or grade of the offense. La.Code Crim.P. art. 465; *State v. Guidry*, 93-1091 (La.App. 1 Cir. 4/8/94), 635 So.2d 731, *writ denied*, 94-960 (La. 7/1/94), 639 So.2d 1163; *State v. Young*, 469 So.2d 1014 (La.App. 1 Cir. 1985). In this case, the State failed to do so.

In *State v. Breaux*, 96-1516 (La.App. 3 Cir. 4/30/97), 693 So.2d 326, the defendant was charged by bill of information with aggravated criminal damage to property and convicted as charged. On appeal, this court recognized as an error patent that the bill of information did not state the amount of the damage allegedly inflicted by the defendant to the property. This court held in pertinent part:

> An allegation of value is essential to a charge of aggravated or simple criminal damage to property. Without this allegation the bill of information is invalid. La.Code Crim.P. art. 470; *State v. Bass*, 509 So.2d 176 (La.App. 1 Cir.1987). Accordingly, defendant's conviction must be reversed, and his sentence set aside.

*Id*. at 327.

In *State v. Olivier*, 03-1589 (La.App. 3 Cir. 6/16/04), 879 So.2d 286, the defendant appealed his conviction and sentence for misapplication of payments by a contractor, in violation of La.R.S. 14:202. This court recognized as an error patent the state's failure to include the value and/or grade of offense in the charging instrument. This court held in pertinent part:

> There is a defect in the bill of information by which Defendant was charged. La.R.S. 14:202 provides, in pertinent part:
>
> > A. No person, contractor, subcontractor, or agent of a contractor or subcontractor, who has received money on account of a contract for the construction, erection, or

4

repair of a building, structure, or other improvement, including contracts and mortgages for interim financing, shall knowingly fail to apply the money received as necessary to settle claims for material and labor due for the construction or under the contract.

The penalties for a violation of La.R.S. 14:202 are as follows:

B. When the amount misapplied is one thousand dollars or less, whoever violates the provisions of this Section shall be fined not less than one hundred dollars nor more than five hundred dollars, or imprisoned for not less than ninety days nor more than six months, or both.

C. When the amount misapplied is greater than one thousand dollars, whoever violates this Section shall be fined not less than one hundred dollars nor more than five hundred dollars, or imprisoned with or without hard labor for not less than ninety days nor more than six months, or both, for each one thousand dollars in misapplied funds, provided that the aggregate imprisonment shall not exceed five years.

Accordingly, the penalty for a violation of La.R.S. 14:202 is determined based on the total amount misapplied. The bill of information in the case at bar does not specify whether the Defendant was charged under section (B) or (C) of La.R.S. 14:202. Although value was discussed at trial and the jury returned a verdict finding a specific value, the bill of information did not properly charge the grade of the offense.

Pursuant to La.Code Crim.P. art. 470, "[v]alue, price, or amount of damage need not be alleged in the indictment, unless such allegation is essential to charge or determine the grade of the offense." While La.Code Crim.P. art. 470 does not require that an indictment include a *specific* monetary value, the allegations in the indictment must be sufficient to determine the grade of the offense. Also, the amount misapplied is determinative of whether a defendant is entitled to a jury trial and whether this court has appellate jurisdiction or only supervisory jurisdiction over the matter. *See State v. Bass*, 509 So.2d 176 (La.App. 1 Cir.1987).

In *State v. Breaux*, 96-1516 (La.App. 3 Cir. 4/30/97), 693 So.2d 326, the defendant was charged by bill of information with aggravated criminal damage to property and was found guilty of simple criminal damage to property where the damage amounted to five hundred dollars or more but less than fifty thousand dollars. The bill of information failed to set forth the amount of damage inflicted by the defendant. This court held the bill was invalid and reversed the defendant's conviction. The matter was remanded to the trial court for further proceedings and the state was allowed to amend the bill of

information to properly charge an offense. *See also State v. Whatley*, 03-655 (La.App. 3 Cir. 11/5/03), 858 So.2d 751. In *State in the Interest of A.P.*, 02-1030 (La.App. 3 Cir. 2/5/03), 838 So.2d 97, the juvenile was charged with theft of goods. The petition failed to establish the value of the items taken and the record contained no evidence of the value of the items although the testimony revealed the items at issue were two CDs. This court held that failure to set forth the value in the bill of information caused it to be invalid and reversed the adjudication of delinquency and order of commitment, discharged the defendant, and dismissed the state's petition.

The above cited cases involve theft and simple criminal damage to property; however, they can be analogized to the present offense since all are graded offenses. Based on La.Code Crim.P. art. 470 and the above cited cases, we find the bill of information in the case at bar is invalid. Therefore, Defendant's conviction is reversed and his sentence set aside. The case is remanded to allow the State the opportunity to amend the bill to properly charge an offense. *See Breaux*, 693 So.2d 326; *Whatley*, 858 So.2d 751; *Bass*, 509 So.2d 176.

*Id*. at 287-88.

In accordance with *Olivier* and its progeny, we find that the value and/or grade of the offense is an essential element that must be included in the charging instrument for both simple arson and theft of a motor vehicle. Therefore, we reverse Defendant's convictions of simple arson and theft, vacate the sentences therefor, and remand that portion of the case to the trial court for further proceedings.

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, Defendant contends that the trial court erred in denying his motion to suppress. Defendant moved to suppress all statements made by him on May 18, 2010, at 8:10 p.m.; May 19, 2010, at 4:53 p.m.; May 19, 2010, at 5:25 p.m.; and May 20, 2010, contending that they were not free and voluntary. The trial court denied the motion.

In reviewing the correctness of a trial judge's ruling on a motion to suppress a confession, "we are not limited to the evidence adduced at the hearing(s) on this motion, but rather may consider all pertinent evidence adduced at trial." *State v. Brooks*, 92-3331, Slip

6

> Op. P. 10 (La. 1/17/95), 648 So.2d 366, 372, *citing State v. Chopin*, 372 So.2d 1222, 1223 n. 2 (La.1979) (*listing cases* ). We examine this evidence in order to discern whether the testimony of the State's witnesses, when viewed in light of the entire record, was sufficient to sustain the State's "heavy burden" of proving a knowing and intelligent waiver. We do not review the record *de novo*, however; as we have often stated in the past, because the evaluation of witness credibility often plays such a large part in the context of a motion to suppress a confession, reviewing courts should defer to the finding of the trial judge unless his finding is not adequately supported by reliable evidence. *Brooks*, *supra*, at 11, 648 So.2d at 372; *State v. Nuccio*, 454 So.2d 93, 100 (La.1984); *State v. Thornton*, 351 So.2d 480, 484 (La.1977).

*State v. Green*, 94-887, p. 11 (La. 5/22/95), 655 So.2d 272, 280-81 (footnote omitted).

At the hearing on the motion to suppress, Trooper Stephen Bruno testified that Defendant's DNA was found on evidence collected at the crime scene and that he was arrested. On May 18, 2010, at 8:11 p.m., after waiving his *Miranda* rights, Defendant gave a statement to the police. During that statement, on one occasion, he mentioned "should I have a lawyer." He then stated, "y'all are f[---]ing me up now. I should have asked for a lawyer if I'd known y'all were gonna [sic] come at me like that, come on brother." However, we note that Defendant did not indicate he wished to stop answering questions; he was not under duress or intimidation; and, Trooper Bruno did not make any threats or promises to Defendant in exchange for his statement.

After signing another waiver of rights form, on May 19, 2010, at 11:46 a.m., Defendant again spoke to Trooper Bruno. He showed police where he bought drugs and was returned to the sheriff's office. On the same date, Trooper Bruno was notified at 4:53 p.m. that Defendant wanted to speak to him. Defendant was again advised of his rights, again waived his rights, and then gave another statement, which concluded at 5:02 p.m. Shortly thereafter, Trooper Bruno was again notified that Defendant wanted to speak to him, and he took another

7

statement from Defendant at 5:25 p.m. At that time, Trooper Bruno went over Defendant's rights with him, and, prior to giving that statement, Defendant indicated he was not threatened or promised anything. The statement concluded at 6:02 p.m. Trooper Bruno testified that there were no threats or promises made by police, that Defendant understood his rights, and that Defendant voluntarily spoke to police.

Sergeant Tim Hanks testified that a statement was taken from Defendant on May 20, 2010, and that the recorder was not stopped and restarted during the statement. He stated that Defendant was informed of his rights at 1:04 p.m., that Defendant understood his rights, and that no threats, promises, or inducements had been made to him during the statement.

Defendant testified that during the statement he gave on May 18, 2010, at 8:10 p.m., he said he wanted to stop and "maybe" get an attorney and that his request was not honored. He stated that he asked for an attorney when the tape recorder was off. Defendant additionally testified that he felt intimidated and that he was threatened by police at the time his wife, daughter, and mother-in-law were "brought into this."

In *State v. Williams*, 05-317 (La.App. 5 Cir. 11/29/05), 918 So.2d 466, *writ denied*, 06-638 (La. 10/6/06), 938 So.2d 64, the officers testified that the defendant waived his rights and agreed to give the statements, and they did not coerce of threaten the defendant or promise him anything in order to get the statements. The fifth circuit noted the only evidence that the defendant was sleep deprived, intimidated, threatened with death, or told what to say in his statement was from the defendant. The fifth circuit found the trial court did not abuse its discretion when denying the defendant's motion to suppress.

After a full review of the testimony in the instant case, we find no error in the trial court's admission of Defendant's statements. The State established that each time Defendant spoke with police, he was advised of his rights and voluntarily waived them prior to making the recorded statements. Additionally, each time Defendant was asked if he had been threatened or promised anything in exchange for his statement, he indicated he had not. The only evidence that the statements were made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises was Defendant's own testimony, and the trial court's ruling indicates it questioned Defendant's credibility. Considering the great weight placed on the trial court's factual determinations and a thorough review of the record, we find no error in the trial court's denial of Defendant's motion to suppress.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, Defendant contends the trial court erred in not considering his trial objections regarding trial counsel.

> An accused has the right to [choose] between the right to counsel, guaranteed in the state and federal constitutions, and the right to self-representation. [*State v.*] *Bridgewater*, [00-1529, p. 17 (La. 1/15/02), 823 So.2d 877,] 894. However, the choice to represent oneself "must be clear and unequivocal." *Id.* "Requests which vacillate between self-representation and representation by counsel are equivocal." *Id.* Whether a defendant has knowingly, intelligently, and unequivocally asserted the right to self-representation must be determined on a case-by-case basis, considering the facts and circumstances of each. *Id.*

*State v. Leger*, 05-11, p. 53 (La. 7/10/06), 936 So.2d 108, 147-48, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007).

Defendant contends that his case is unusual in that he was allowed to represent himself after his trial had begun. He also contends that the trial court "abruptly and unilaterally" removed his trial counsel and required him to represent

himself without a hearing. He further contends that he did not make an unequivocal and timely request to represent himself and that the trial court erred in granting his request for self-representation without holding the required *Faretta*[1] hearing to determine if he was competent to waive counsel and was voluntarily exercising his informed free will. Defendant states the following in his brief:

> By *ex parte*: 1) firing trial counsel; 2) then reappointing him, without notice to his client; 3) then abruptly firing him again, and required [sic] Mr. Toussaint to represent himself, 4) then allowing the trial attorney to finish the case, the trial court denied Mr. Toussaint his right to counsel during one of the most critical parts of this case, the calling and confronting witness in his part of the case.

The State asserts that Defendant was not entitled to a hearing before the trial court allowed him to represent himself because he never represented himself at any time during trial. The State further contends that the mere expression of Defendant's desire to represent himself did not constitute self-representation, thereby necessitating a hearing.

During trial, Sergeant Wayne Vidrine was testifying regarding Defendant's statements to police when Defendant interrupted and the following occurred:

**BY MR. TOUSSAINT:**

> Man, Your Honor, that's not what happened. They brought me to the scene, they told me what to say on that statement.

**BY THE COURT:**

> Hold it, wait, wait, take the jury out.

**JURY LEAVING COURTROOM AND DEFENDANT CONTINUES TO SPEAK**

**BY MR. TOUSSAINT:**

> That's not what happened. I'm not gonna [sic] sit here and let them play me on that last statement. Play all them statements. They

---

[1]"In *Faretta* [*v. California*, 422 U.S. 806, 95 S.Ct. 2525 (1975)], the United States Supreme Court recognized that a trial court may not force a lawyer upon a defendant when the defendant insists he wants to conduct his own defense and voluntarily and intelligently elects to proceed without counsel." *State v. Brown*, 03-897, p. 28 (La. 4/12/05), 907 So.2d 1, 22.

took me to the scene, they told me what to say or they was gonna [sic] mess over my family that's why I said what I said, and I want to fire my lawyer, y'all can finish without me, that's the third time I [sic] fire him and you told me I couldn't fire him, I want to hire me a lawyer.

**BY THE COURT:**

The trial is going on Mr. Toussaint.

**BY MR. TOUSSAINT:**

I asked you that before trial. Thank you Your Honor, I'd like to be excused.

**BY THE COURT:**

You may be excused.

**BY MR. TOUSSAINT:**

That's what happened.

**DEPUTY ESCORTING DEFENDANT OUT OF COURTROOM**
**BY THE COURT**

The trial court then stated: "Mr. Chapman, I think Mr. Toussaint has terminated your services, but since he has left I'm going to ask you and reappoint you to complete the trial on his behalf." The trial then continued with Sergeant Vidrine's testimony, after which the State rested its case.

Defense counsel called Mr. Trent Brignac, the Evangeline Parish District Attorney, to testify. After Mr. Brignac's testimony and a break for lunch, the court reconvened and the following colloquy took place:

**BY MR. CHAPMAN:**

We need to go on the record about a few things.

My client advises me that I think he wishes to represent himself at this point forward. He wants to recall Mr. Brignac to the stand, conduct different areas that I didn't cover.

**BY THE COURT:**

Mr. Toussaint, is it your desire to terminate the services of Mr. Chapman and represent yourself?

11

**BY MR. TOUSSAINT:**

Yes sir.

**BY THE COURT:**

Okay, I will allow it. Mr. Brignac has been called once and has been questioned. I assume you are going to object?

**BY MR. FONTENOT:**

Two things first Your Honor. I just want to make sure I understand Mr. Toussaint's position is that he understands he has the right to counsel and he's waiving that right?

**BY THE COURT:**

Are you waiving your right to counsel Mr. Toussaint?

**BY MR. TOUSSAINT:**

No, he's not, I want to ask the questions. The questions I ask him to ask he's not asking. I'm not saying he can't be on my side, but I need all the questions that I'm saying to be asked, and the witnesses I want to call to be called, not the witnesses that's gonna [sic] help them build a case.

**BY THE COURT**:

Your witness was called this morning, Mr. Brignac testified, you chose not to be here voluntarily, you chose not to testify. If the State objects to Mr. Brignac being called back to the stand I'm going to sustain that objection.

**BY MR. FONTENOT:**

So, he's representing himself Your Honor?

**BY THE COURT:**

He's representing himself.

**BY MR. FONTENOT:**

And I understand. I guess what he's asking is that Mr. Chapman stay on just to assist him?

**BY THE COURT:**

I will ask Mr. Chapman to assist him if you don't mind Mr. Chapman.

12

**BY MR. CHAPMAN:**

I don't mind if it's okay with him.

**BY THE COURT:**

Would you like Mr. Chapman to at least guide you here?

**BY MR. TOUSSAINT:**

I want Mr. Trent on the stand . . . .

**BY THE COURT:**

That's not the question.

**BY MR. TOUSSAINT:**

Me or him could, it don't matter if he ask him the questions as long as he asks him the questions I want him to ask.

**BY THE COURT:**

Let me once again tell you. You chose to leave voluntarily.

**BY MR. TOUSSAINT:**

But that's not the way they say everything was gonna [sic] go Your Honor.

. . . .

**BY THE COURT:**

He has testified, and I will not call him again. All right, who is your next witness Mr. Toussaint.

**BY MR. TOUSSAINT:**

I only have one witness, Trent Brignac.

**BY THE COURT:**

He is not testifying, he has already testified. Do you have any additional witnesses?

**BY MR. TOUSSAINT:**

No sir, I sure don't.

**BY THE COURT:**

If you have no additional witnesses you are resting then?

**BY MR. TOUSSAINT:**

I don't know what y'all talking about.

**BY THE COURT:**

That's why . . . .

**BY MR. TOUSSAINT:**

I want Trent to get on the stand so I can ask him the questions that was happening at grand jury room across the hall when I gave that false statement that I killed that girl and I didn't kill her.

**BY THE COURT:**

You had your opportunity this morning, but you chose not to be here.

**BY MR. TOUSSAINT:**

Your Honor, they switch everything up, he just told you, he told me none of my witnesses are gonna [sic] be called until tomorrow.

**BY MR. FONTENOT:**

Your Honor, can I address that issue?

**BY THE COURT:**

Proceed.

**BY MR. FONTENOT:**

If you recall when the State did rest, we had probably an hour or more than a half hour break between the time the State rest [sic] and the time the defense called Mr. Brignac, which is more than enough time for Mr. Toussaint to come up from downstairs to address Mr. Brignac if he so choose [sic].

**BY THE COURT:**

It's too late.

**BY MR. TOUSSAINT:**

I [sic] been asking to come back up and he [sic] a witness they said that he was up here and I [sic] been banging on that door to come back up.

**BY THE COURT:**

You walked out this morning, the trial continued in a normal fashion.  Do you have a witness Mr. Toussaint?  Call your witness, if not, we . . . .

. . . .

**BY MR. TOUSSAINT:**

You don't have to play the tapes or none of that, just do y'all closing.

**BY MR. CHAPMAN:**

It's kind of like you can say that we rest, we rest.

. . . .

**BY MR. CHAPMAN:**

One other housekeeping.  As far as jury charges and that type of thing, do you want Mr. Toussaint to handle that directly, or does he want me to review that on his behalf?

**BY MR. TOUSSAINT:**

What's that?

**BY MR. CHAPMAN:**

The jury charges.

**BY THE COURT:**

The instructions to the jury.  It's a legal technical . . . .

**BY MR. TOUSSAINT:**

He can handle that.  The only thing I wanted to do was talk to Trent.  He can handle the rest of it.

15

**BY THE COURT:**

All right, Mr. Chapman will review the charges. Bring the jury in.

**JURY ENTERING COURTROOM**

**BY THE COURT:**

Please be seated.

All right, does the defense have any additional witnesses? Do you have any additional witnesses?

**BY MR. TOUSSAINT:**

No sir.

Court subsequently recessed for the day.

The next day, the following occurred:

**BY THE COURT:**

Before we take the jury in, Mr. Toussaint, I understand you have a statement you wish to read to the court?

. . . .

**BY MR. TOUSSAINT:**

Good morning Your Honor.

If it pleases the court. I have fired my lawyer two times before this trial started, and again yesterday you keep re-appointing me the same lawyer. I even said I could hire one, you said you were going to proceed. I asked the court to excuse me yesterday, while I was gone you re-appointed Mr. Chapman as my lawyer with me not being in the courtroom again, and then you made the guard come and get me and talk to me about representing myself. I am not a lawyer. If that was the case you should have let me hire one. I do not know what to do at this time, but I know that I am not getting a fair trial. As soon as y'all found out I was trying to hire one y'all put a rush on everything. The only thing I want is a fair trial and a fair jury. Thank you. I would like for the record to reflect, no, I am not representing myself because it is too late in this trial to change things now. Have a blessed day.

**BY THE COURT:**

Mr. Toussaint, you certainly have the right to represent yourself, but the law of the State of Louisiana prohibits a person from

just terminating their lawyer at the last minute and using this as a basis to try to get a continuance. We are too far into this matter now. Now, if you wish to represent yourself, I need to caution you about the consequences of it. As you have said, you are not a lawyer, you do not know the procedural steps, you do not know the protocol that is required in the presentation of a case to the jury, but considering your educational background and your experiences, I want you to understand that it could be very devastating for you to try to represent yourself. Do you understand that sir?

**BY MR. TOUSSAINT:**

Yes sir, but I been trying to fire my lawyer months before this Your Honor. It's not just something that happened yesterday.

**BY THE COURT:**

We're at the stage now Mr. Toussaint where either you are going to represent yourself or Mr. Chapman will conclude the case for you. You have to decide which one you want.

**BY MR. TOUSSAINT:**

Well, you already decided Your Honor. It's too late to change things now.

**BY THE COURT:**

Now, if you do not want Mr. Chapman representing you, you certainly have that right, but you are putting yourself into great risk by doing that.

**BY MR. TOUSSAINT:**

Your Honor, you keep re-appointing Mr. Chapman as my attorney.

**BY THE COURT:**

Well, that is because . . . .

**BY MR. TOUSSAINT:**

I cannot represent myself Your Honor. I wanted to hire a lawyer; you told me you was gonna [sic] proceed. This was way before this trial started.

**BY THE COURT:**

The first time you told me you wanted to hire a lawyer was five days before the trial.

**BY MR. TOUSSAINT:**

No, that's not true.

**BY THE COURT:**

Anyway, that's where we are.

In *State v. Lewis*, 07-944 (La.App. 5 Cir. 3/25/08), 982 So.2d 866, the defendant, through counsel, filed a written motion requesting that he be allowed to represent himself. At a hearing on the issue, the trial court asked the defendant whether he had any training that would allow him to represent himself. The defendant answered that he did not. The trial court then asked the defendant why he wanted to represent himself. The defendant indicated dissatisfaction with his attorney as well as confidence in his knowledge of and ability to handle his case. Lastly, the trial court asked the defendant whether he had ever selected a jury or tried a case. The defendant answered no to both questions. Following this limited questioning, the judge court ruled that it would allow the defendant to "do a certain amount of the defense" for himself, but defense counsel would remain in the courtroom in the event the defendant needed advice. *Id*. at 869.

The fifth circuit found it was questionable whether the above exchange was sufficient to constitute a valid waiver of the defendant's right to counsel. However, the fifth circuit did not find it necessary to make a determination on that issue. The court noted the defendant did not object to the trial court's ruling on the issue of self-representation and acquiesced when the trial judge informed him that he could do a certain amount of defense for himself, but that his court appointed defense counsel would be there to assist him.

The fifth circuit further noted that while the parties alleged the defendant waived his right to counsel, the record indicated that defense counsel was present at all court proceedings subsequent to the trial court's ruling on the issue of

18

self-representation. Specifically, the minute entries indicated that defense counsel appeared for trial on June 18, 21, and 28, 2007. On each of those occasions, the trial was continued. Then, on August 20, 2007, the defendant appeared, again with defense counsel, and requested a continuance of the trial, which was denied by the trial court. The transcript from the August 20, 2007 hearing showed that defense counsel did, in fact, assist defendant. He prompted the defendant to move for the continuance and also objected on his behalf when it was denied. The next day, the trial court considered numerous pre-trial motions which the defendant had filed. Once again, the minute entry from that date indicated the defendant represented himself but was assisted by defense counsel. Following the denial of his motions on August 21, 2007, the defendant, with the clear representation of counsel, withdrew his not guilty pleas and pled guilty to the charged offenses. At the beginning of the guilty plea proceedings, defense counsel advised the trial court that he had filled out the waiver of rights form with the defendant and had explained those rights to him. Moreover, the waiver of rights form was signed by the defendant and defense counsel. In the form, the defendant indicated that he was satisfied with the way his attorney and the trial court had handled his case. Defense counsel also represented the defendant in the guilty plea proceedings on the multiple bill, and thereafter, filed a motion for appeal on the defendant's behalf.

The fifth circuit went on to find that the defendant had the assistance of counsel throughout the proceedings and was fully represented by counsel at the time he entered his guilty pleas. Therefore, the defendant's rights were not violated by the trial court's ruling on the issue of self-representation.

In *State v. Treadway*, 97-901 (La.App. 5 Cir. 3/25/98), 710 So.2d 1121, *writs denied*, 98-1634 (La. 9/25/98), 725 So.2d 490, 00-1197 (La. 1/12/01),

780 So.2d 1067, the defendant filed a pre-trial motion for permission to represent himself. The day that trial was set to begin, the trial judge addressed the motion and ruled the defendant would have the opportunity to assist his court-appointed defense counsel. At the same hearing, appointed counsel made arguments on behalf of the defendant and the defendant never re-urged his motion to represent himself. On the date trial actually began, the defendant filed several pro se motions. In one motion, he complained he was not satisfied with defense counsel's representation. The exchange below then occurred:

THE DEFENDANT:

Your Honor, I'm not happy with Ms. Guste as counsel---

THE COURT:

--- expound on the record---

THE DEFENDANT:

-- whatsoever. The other lawyer was supposed to be--

THE COURT:

Mr. Treadway, I'm, going to tell you something that it's not in your best interest to continue talking once the jury comes in the room, okay.

THE DEFENDANT:

That man attorney that was here last week was supposed to be present here today also.

*Id.* at 1123.

The fifth circuit stated this exchange indicated the defendant merely wanted a different attorney. The fifth circuit further stated:

Treadway did at first seek pro se representation but he subsequently was afforded all of the benefits of legal representation. Perceivably, he agreed with everything Ms. Guste did or did not do. In any event, Treadway on appeal has not alleged any mistake by Ms. Guste or has he pointed out any flaw in the manner his defense was presented.

The trial judge did not conduct a full hearing to ascertain whether Treadway was sufficiently adept to represent himself; however, inasmuch as he was ably and competently represented by counsel following the in-court exchanges with the trial judge, the need for a formal waiver of counsel was abrogated. On January 23, 1997, it would seem that Treadway had abandoned his pro se motion.

Treadway states in his brief to this Court that he was not allowed to question any witness or to argue his case. He does not say that during trial he wanted to do any of these things but was denied the opportunity, either by Ms. Guste or the trial judge.

We see no prejudice or reversible error in Treadway's consenting to Ms. Guste's trial representation although early on he had moved for pro se representation and on the day of trial said that he wanted Ms. Guste dismissed and "the man attorney" present.

*Id.* at 1123-24.

In the instant case, we need not determine whether Defendant validly waived his right to counsel. As in *Lewis*, 982 So.2d 866, and *Treadway*, 710 So.2d 1121, Defendant was represented by counsel throughout the proceedings. Mr. Chapman was present at all times during trial subsequent to Defendant's request to fire Mr. Chapman and/or represent himself. Mr. Chapman made closing arguments to the jury and was present when the jury was instructed and the verdicts rendered. Further, Mr. Chapman was present when Defendant was sentenced, and he filed a Motion for Appeal on behalf of Defendant.

Having thoroughly reviewed the record, we find that Defendant had the assistance of counsel and was fully represented by counsel throughout the trial. Therefore, we find that Defendant's rights were not violated by the trial court's ruling on the issue of self-representation.

**DISPOSITION**

Defendant's conviction and sentence for second degree murder is affirmed. Defendant's convictions for simple arson with damages over $500.00 and theft of a motor vehicle over $500.00 are reversed; the sentences imposed for those two

convictions are vacated; and, the matter is remanded to the trial court for further proceedings consistent herewith.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**